Gary A. LAMOUREUX, Richard A. Terwilliger, & World Wide Medical Technologies, LLC, Plaintiffs,

v.

GENESIS PHARMACY SERVICES, INC., d/b/a Custom Care Pharmacy, Defendant.

Civ. No. 3:03CV1382CFDTPS.

United States District Court, D. Connecticut.

Jan. 28, 2004.

Carolyn J. Vacchiano, Wiggin & Dana, New Haven, CT, Carrie Ann Hanlon, William J. Speranza, Wiggin & Dana, Stamford, CT, for Plaintiffs.

**156**

Charles L. Howard, Patrick M. Fahey, Shipman & Goodwin, Hartford, CT, Lee A. Duval, Shipman & Goodwin, Stamford, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION TO COMPEL AND FOR EXPENSES

SMITH, United States Magistrate Judge.

The plaintiffs, Gary A. Lamoureux, Richard A. Terwilliger, (together the "Individual Plaintiffs") and World Wide Medical Technologies, LLC ("WWMT"), commenced this action against the defendant, Genesis Pharmacy Services Inc., d/b/a Custom Care Pharmacy ("Genesis"), alleging *inter alia*, patent infringement in violation of 35 U.S.C. § 271, false designation of origin/false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), breach of contract, and unfair trade practices within the meaning of section 42–110b of the Connecticut General Statutes. (Compl. ¶¶ 21–42). Pending before the court is the defendant's Motion to Compel and for expenses (**Dkt. # 48**). As explained below, the defendant's motion, in all respects, is **GRANTED**.

### Background

This case centers on a patent jointly held by the Individual Plaintiffs known familiarly as the "'760 Patent" which describes a "Pre–Loaded Needle Assembly" that is used to treat cancer by implanting therapeutic elements (radioactive "seeds") into the body. (Compl. ¶ 6, Ex. A). Essentially, the needles were "pre-loaded" with these elements which "reduces preparation time as well as personal exposure to the radioactive seeds." (*Id.* at Ex. A at 2). Moreover, the invention "exactly locates the first seed a repeatable and known distance from the distal end of the cannula in each needle used thus improving the accuracy of placing the radioactive seeds in the body." (*Id.*).

In pre-loading these needles, "it is necessary to plug the exit end of the needle with some material so that the seeds and spacers will not fall out (and also to prevent body fluids from entering the needle bore when it is inserted into the prostate)." (*Id.* ¶ 9).

Where previously, the prior art required that oncologists or physicists use less ideal plugs such as "bone wax", the patent describes a "pre-plugged" needle "in which the exit bore contains within it a 'plug' of any suitable biocompatible material, which is placed at a predetermined distance from the needle exit." (*Id.* ¶ 11, Ex. A at 2).

Principally, the use of a plug which is placed at a *defined, predetermined* distance within the needle bore end—in contrast to the prior art practice of plugging the needle end in a manner which results in a *variable* and *uncontrolled* extent of plugging material within the needle bore end area—means that the desired predetermined placement of seeds and spacers within the needle to produce a specific implantation array and pattern of seeds in the prostate can be achieved with exactitude rather than the imprecision occasioned by the prior art variable degree of incursion of a plugging material into the needle bore.

(*Id.* ¶ 12). Essentially, "pre-plugged" needles offer greater precision than the prior art.

In September of 2001, the parties entered into an agreement whereby *inter alia* WWMT would sell to Genesis its brand of pre-plugged needles. (*Id.* ¶ 14). However, when circumstances allegedly revealed that Genesis "was either using pre-plugged needles from another source for preparing the Readi–Load ™ system of pre-plugged needles and/or that [Genesis] was using WWMT's pre-plugged needles but assembling and distributing pre-plugged, loaded needles and kits without accounting to WWMT, all in contravention of the agreement," WWMT terminated the relationship. (*Id.* ¶¶ 15–16).

The plaintiffs complain that they are owed money on the original agreement, that Genesis continues, without authorization or license from WWMT, loading seeds into pre-plugged needles either manufactured by it or obtained from others, that it is advertising the same on its website and elsewhere and that, in so doing it is using a depiction of WWMT's own Seed–Lock ™ pre-plugged needles and Readi–Load ™ system, and that it makes

false and or misleading representations to others regarding the same. (*Id.* ¶¶ 17–20).

With its Answer, Genesis has asserted several affirmative defenses, including that the 760 Patent is not valid under 35 U.S.C. §§ 102, 103, and/or 112, that it is not enforceable due to the plaintiffs' misuse of the patent, and that its use does not infringe upon the patent. (Ans. at 7–8). In addition, Genesis has filed several counterclaims seeking a declaratory judgment of non-infringement and invalidity, tortious interference, unfair trade practices, breach of contract, breach of implied contract, and unjust enrichment. (Ans. at 8–17).

Three discovery requests form the basis of the present motion: two interrogatories (Interrogatories No. 1 and 14) and one request for admission (Request for Admission No. 82). Interrogatory No. 1 requests that the plaintiffs "state the earliest dates upon which each invention claimed in the patent-in-suit is contended ... to have been conceived and reduced to practice, and identify all facts, documents and witnesses which support each such date." (D.'s Mem. Supp. Mot., 9/14/04, at 7, Ex. A at 3–4). The plaintiffs responded that

> [t]his interrogatory is objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. To date, defendant has not made known its defenses, if any, based upon prior art, nor has defendant identified any alleged prior art it is relying upon in connection with those defenses. The conception and reduction to practice dates for the invention of the '760 Patent have relevance only insofar as determining whether an item of alleged prior art relied upon by defendant under either 35 U.S.C. §§ 102(a), 102(e) or 102(g) is in fact prior art. Until such time as defendant makes explicit its assertions in this respect, and until such time as Lamoureux and his co-plaintiff's then elect to allege a date of invention earlier than any such alleged prior art so as to "swear behind" it, the subject matters inquired of are irrelevant.

(*Id.*). However, in an attempt to "compromise", the plaintiffs supplemented this response accordingly:

> This interrogatory is objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. To date, defendant has not made known its defenses, if any, based upon prior art, nor has defendant identified any alleged prior art it is relying upon in connection with those defenses. The conception and reduction to practice dates for the invention of the '760 Patent have relevance only insofar as determining whether an item of alleged prior art relied upon by defendant under 35 U.S.C. §§ 102(a), 102(e) or 102(g) is in fact prior art. Subject to these and the general objections, and without waiver thereof, Plaintiff Lamoureux states that he will provide the date of conception and reduction to practice, and documents evidencing the same, after the entry of a suitable protective order governing the disclosure of confidential information.

(*Id.* at 9, Ex. 7 at 1, Ex. D at 3–4,).

Interrogatory No. 14 requests that the plaintiffs "[d]escribe with particularity the nature of your contribution to each and every invention claimed in the '760 Patent." (D.'s Mem. Supp. Mot., 9/14/04, at 14, Ex. A at 13). In response, the plaintiffs contend that

> [t]his Interrogatory is objected to as vague and indefinite in its reference to "particularity" inasmuch as Lamoureux cannot be expected to determine what information defendant considers to be particular or not. The Interrogatory is also objected to as vague and indefinite in its reference to "inventions," inasmuch as the '760 Patent is for "an invention." Subject to these and the General Objections, and without waiver of them, and with reference to the claimed subject matters of the '760 Patent, and upon entry of a Protective Order, Lamoureux will produce, pursuant to Rule 33(d), Fed.R.Civ.P., documents from which information sought may be ascertained.

(*Id.*). Again, the plaintiffs later supplemented their response:

> This Interrogatory is objected to as vague and indefinite in its reference to "particularity" inasmuch as Lamoureux cannot be expected to determine what information defendant considers to be particular or not.

The Interrogatory is also objected to as vague and indefinite in its reference to "inventions," inasmuch as the '760 Patent is for "an invention." Subject to these and the General Objections, and without waiver of them, and with reference to the claimed subject matters of the '760 Patent, Plaintiff Lamoureux states that he and Plaintiff Terwilliger worked simultaneously and in conjunction with one another on the conception and reduction to practice of the invention claimed in the '760 Patent, and that he cannot state that any particular claimed subject matter was solely his idea or contribution as opposed to a joint idea or contribution with Mr. Terwilliger.

(*Id.* at 16, Ex. D at 12–13).

Finally, Request for Admission No. 82 posits that "[n]one of the needles photographed and depicted on Exhibit 12 hereto has a plug contained therein." (D.'s Mem. Supp. Mot., 9/14/04, at 19). The plaintiffs responded that they "object[ ] to this Request for Admission as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and as vague and indefinite. Subject to these objections, and without waiver thereof, and on information and belief, [they] den[y] this Request." (*Id.* at 21). The plaintiffs later "supplemented" this answer, stating that they "object[ ] to this Request for Admission as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, and without waiver thereof, [they] den[y] this request." (*Id.* at 22). Still later, the plaintiffs re-supplemented their answer:

Plaintiff Lamoureux objects to this Request for Admission as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, and without waiver thereof, Plaintiff Lamoureux states that he has made reasonable inquiry and that the information known or readily available by Lamoureux is insufficient to enable him to admit or deny the request without qualification, but that, upon information and belief, Plaintiff Lamoureux denies this Request.

(*Id.*). Unsatisfied with these responses, Genesis filed the present motion to compel suffi-cient responses and for the fees and costs associated thereto.

### Standard of Review

The scope of permissible discovery is quite broad. *Marchello v. Chase Manhattan Auto Finance Corp.*, 219 F.R.D. 217, 218 (D.Conn. 2004). *See also Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment"). Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth its scope and limitations, providing:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). "Discovery is normally allowed into any matter that bears upon the issues or reasonably could lead to relevant information." *Kimbro v. I.C. System, Inc.*, No. 3:01CV1676, 2002 WL 1816820, at *1, 2002 U.S. Dist. LEXIS 14599, at *2 (D.Conn. Jul. 22, 2002). Moreover, in the Second Circuit, "this obviously broad rule is liberally construed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y.1988).

 If a party resists or objects to discovery, Rule 37 of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery ...." Fed.R.Civ.P. 37(a). A party may object to a request if it is irrelevant, overly broad, or unduly burdensome. Charles A. Wright, Arthur R. Miller & Richard L. Marcus, 8A Federal Practice & Procedure § 2174, at 297 (2d ed.1994). To prevail on its objection, however, the objecting party must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compag-*

*nie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984). The objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations and quotation marks omitted). *See also Kimbro,* 2002 WL 1816820 at *1, 2002 U.S. Dist. LEXIS 14599 at *2 (stating that "the objecting party ... bears the burden of showing why discovery should be denied") (citation omitted). Moreover, the court, in deciding discovery issues, is afforded broad discretion. *See Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir.2004).

### The Interrogatories

The practice of serving and answering interrogatories is governed by Rule 33 of the Federal Rules of Civil Procedure. Pertinently, Rule 33 sets forth

> (1) Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.
>
> . . . .
>
> (5) The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

Fed.R.Civ.P. 33(b). Interrogatories "may relate to any matters which can be inquired into under Rule 26(b)(1) ..." Fed.R.Civ.P. 33(c).

### Interrogatory No. 1

■ In their brief, the plaintiffs contend that, because they "agreed to provide the information requested by Interrogatory No. 1 long before the filing of this motion; nothing remains to be 'compelled'." (Pl.'s Mem. Opp. Mot., 10/8/04, at 4). The court disagrees. Manifestly, *providing* information and *agreeing* to provide information "upon the entry of a protective order" are not equivalents in the context of discovery disclosures. (*See id.* at 4). Either information *has* been disclosed or it *has not* been disclosed. If it has not been disclosed, then, plainly, it remains to be compelled.

■ Further, the plaintiffs complain that the defendant's "argument regarding Interrogatory No. 1 focuses *ad naseum* [sic] on the 'relevancy' of the requested information" and that such focus was "wholly unnecessary." (*Id.*). The court disagrees on both counts. First, the court refuses to accept the hyperbole that an argument just shy of two pages is excessive. (*See* D.'s Mem. Supp. Mot., 9/14/04, at 10–11). Surely, the discussion warrants more than a few scant sentences. Second, relevancy is the *sine qua non* of a discovery dispute involving Rule 26(b)(1). Clearly, an accompanying memorandum which did not adequately address the issue of relevancy would be wholly deficient. Indeed, the plaintiffs' contention evinces a fundamental misunderstanding of the Federal Rules of Civil Procedure as they pertain to the scope of discovery. *See* Fed. R.Civ.P. 26(b)(1).

■ Moreover, despite their contention that "no dispute exists regarding the relevancy of the requested information," the plaintiffs continue[1] to hold that the requested

---

1. Throughout discovery, the plaintiffs have maintained that the requested information is not relevant. *See* Pl.'s Response to D.'s First Set of Interrogatories to Pl. Gary Lamoureux dated January 30, 2004 (stating that the interrogatory is "objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence"); Letter from William J. Speranza to Patrick M. Fahey dated May 10, 2004 (stating that the "information sought as to invention dates simply is not relevant in the absence of any contention by defendant that it is relying upon prior art which actually implicates the date of

invention ...."); Letter from Carolyn Vacchiano to Patrick M. Fahey dated June 16, 2004 (stating that the plaintiffs "continue to believe that their objection is well-taken" but offering the "compromise" of producing documents "upon entry of a suitable protective order"); Pl.'s Supp. Responses to D.'s First Set of Interrogatories to Pl. Gary A. Lamoureux dated July 8, 2004 (stating again that the interrogatory is "objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence"); Letter from Carolyn Vacchiano to Patrick M. Fahey

information is not relevant. (Pl.'s Mem. Opp. Mot., 10/8/04, at 4–5 & Ex. B at 2). The defendant, on the other hand, argues that the requested information is relevant, contending that

> Genesis has alleged a defense, as well as a counterclaim, affirmatively asserting that the '760 Patent is invalid under 35 U.S.C. §§ 102 & 103. The information sought by Genesis—information concerning the alleged date of invention and reduction to practice—is relevant in order to determine, among other things, whether the 'invention was known or used by others ... before the invention thereof by the applicant[s]' and/or whether the claimed subject matter 'would have been obvious at the time the invention was made ....' 35 U.S.C. §§ 102 & 103. In addition, the conception and reduction to practice dates for the inventions claimed in the '760 Patent are relevant to substantiate plaintiffs' claim, under oath, that they are the first and original inventors of the invention. *See, e.g.* 28 U.S.C. § 1928.

(D.'s Mem. Supp. Mot., 9/14/04, at 11). The court agrees with the defendant.

The dates in question—when the plaintiffs conceived and reduced to practice the invention claimed with regard to the 760 Patent—are incontrovertibly relevant to defenses and counterclaims based upon statutes which turn almost exclusively on such dates. Frankly, the court is surprised that the plaintiffs would attempt to assert otherwise. While not without their limits, requests for information are afforded a broad and liberal construction. *Hickman*, 329 U.S. at 507, 67 S.Ct. 385. To hold that the information sought through Interrogatory No. 1 is irrelevant to the defendant's defenses and/or counterclaims would go beyond even a narrow and conservative construction. The court

finds that the information is patently relevant.

 Having neither demonstrated that Interrogatory No. 1 is irrelevant, overly broad, nor unduly burdensome,[2] the court finds that the plaintiffs have failed to sustain their burden of showing why discovery should be denied. *See Kimbro*, 2002 WL 1816820, at *1, 2002 U.S. Dis. LEXIS 14599 at *2. Therefore, the motion to compel, to the extent that it seeks information responsive to Interrogatory No. 1, is GRANTED. The plaintiffs cannot attach conditions[3] to the production of obviously relevant information. The information is relevant and the request is not overly broad nor unduly burdensome. As such, the plaintiffs are hereby **ORDERED** to fully respond to the interrogatory forthwith.

### Interrogatory No. 14

Contrary to Genesis's averments, the plaintiffs assert that their response to Interrogatory No. 14 is complete. (*See* Pl.'s Mem. Opp. Mot., 10/8/04, at 7). They claim to have "provided the information requested in Interrogatory No. 14 in narrative form [their supplemental response] *and* further agreed to produce supporting documents after the entry of a protective order." (*Id.*). However, because no reasonable reading of the supplemental response could sincerely be described as having "provid[ed] the information requested," the court disagrees. The plaintiffs' response amounts to an objection and an unsatisfactory explanation as to their belief that they are unable to provide the information requested. Contrary to the plaintiffs' contentions, the response is incomplete.

 In addition, the plaintiffs object to the interrogatory "as vague and indefinite in its reference to 'particularity' inasmuch as [they] cannot be expected to determine what infor-

---

dated July 9, 2004 (stating that the plaintiffs "are agreeing to provide this information to you, once a Protective Order is in place, despite our continued belief that this information is not relevant at this time ....").

**2.** The plaintiffs do not suggest that the interrogatory was overly broad nor unduly burdensome.

**3.** The plaintiffs submit that they would provide the information "upon the entry of a protective

order" because the information sought is confidential and "plainly within the purview of Rule 26(c)(7)." (*See* Pl.'s Mem. Opp. Mot., 10/8/04, at 4–6). The court is not convinced that the plaintiffs, through their opposition brief, have demonstrated the good cause necessary for the issuance of a protective order. *See* Fed.R.Civ.P. 26(c). That said, no motion for a protective order having been filed, the court will not delve into the merits of the contention.

mation defendant considers to be particular or not." (*Id.*). The court disagrees and is similarly not impressed with this line of argument. Asking that the plaintiffs describe their contribution *with particularity*, on any fair reading, amounts merely to a request that they be specific rather than general; that they be detailed rather summary. In no way whatsoever could this request render the interrogatory vague and indefinite. The plaintiffs are under a duty to respond in good faith and with sufficient detail. 7 Moore's Federal Practice § 33.101 (3d ed.2004). Requiring, as the plaintiffs request, that the defendant specify that information which it considers to be particular puts the cart before the horse and, more importantly, runs contrary to the spirit and the letter of the Federal Rules of Civil Procedure as they pertain to discovery.

■ Moreover, the plaintiffs also object to the interrogatory "as vague and indefinite in its reference to 'inventions,' inasmuch as the '760 Patent is for 'an invention.'" (Pl.'s Mem. Opp. Mot., 10/8/04, at 7). The court similarly finds this objection unavailing, as it appears to be exactly the type of hair-splitting that is criticized in *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D.Conn.), albeit in a slightly different context. If only one invention is claimed in the 760 Patent—namely the "Pre–Loaded Needle Assembly", as the objection seems to argue—then *it* would be each and every invention claimed in the 760 Patent and a proper response would discuss *with particularity* the nature of each plaintiff's contribution to *it*. Of course, if the invention contains several parts, each part being a separate invention itself (for instance, pre-loaded plugs), a proper response will discuss *with particularity* the nature of each plaintiff's contribution to *each part*. Again, the court is surprised at the plaintiffs' misinterpretation of such an obviously clear and unambiguous request.

■ Further, the plaintiffs argue that while Genesis "may have desired a different response, the facts cannot support the type of response [it] seeks to compel herein." (Pl.'s Mem. Opp. Mot., 10/8/04, at 8)(caps omitted). They argue that "it is not unusual for joint inventors of a patent to be unable to distinguish or separate their individual contributions to the ultimate invention …." (*Id.*). While the court understands and appreciates the plaintiffs' point, it finds that the facts here *can* support the type of response Genesis seeks to compel.

Obviously, where co-inventors are involved, identifying each inventor's contributions may raise certain issues. Where each inventor worked solely on separate parts of the invention (for instance, one devised the pedals, one the wheels, another the handlebars), identifying each inventor's contribution is easy. However, where the inventors worked jointly, it is difficult, if not impossible, to point to one aspect of the invention and proclaim it to be one's own and sole contribution. Understandably, many co-inventors work jointly, acting in concert and as a springboard of ideas for the other. That is not to say, however, that simply because one's efforts become intermingled with another's, one ceases to be able to describe one's contributions. The contribution of one does not cease to exist simply because it is combined with another's efforts.

Still, while it may be true that each individual plaintiff is unable to state which "particular claimed subject matter was *solely* his idea or contribution as opposed to a *joint* idea or contribution with" the other, (Pls.' Mem. Opp. Mot., 10/8/04, at 7) (emphasis added), the interrogatory does not request that they distinguish between the two. Interrogatory No. 14 simply requests that each plaintiff "[d]escribe with particularity the nature of [his] contribution to each and every invention claimed in the '760 Patent." (*Id.*). It asks what contribution each plaintiff made, or what role each plaintiff played, and does not ask them to differentiate between individual and joint ideas or contributions. *Both* are contributions and *both* should be described with as much particularity as a *good faith* response would merit. Where joint ideas or contributions are concerned, a good faith response would merit, at the very least, a description of the joint activity which brought about the invention.

■ Further, the plaintiffs argue that the defendant provides "no legal or factual sup-

port for its contention that the requested narrative is not confidential or publicly available simply because the '760 Patent itself is within the public domain." (*Id.* at 8). While that may be true, it is not the defendant's burden to so provide. Where the request is relevant, not overly broad, and not unduly burdensome, the defendant is entitled to the responsive information. It need not also establish that the information is *not* confidential. While Rule 26(c)(7) of the Federal Rules of Civil Procedure provides that a party may apply for a protective order regarding "confidential research, development, or commercial information," no motion for a protective order is before the court. As such, it declines to entertain the merits.

Based upon the foregoing, the court finds that the plaintiffs' objections to Interrogatory No. 14 are unconvincing. Moreover, the court finds that the plaintiffs' supplemental response is not complete and that the facts here can support the type of response the defendant seeks to compel with a good faith effort. Because the interrogatory is relevant, not overly broad, and not unduly burdensome, the defendant's motion, to the extent that it moves to compel a proper response to Interrogatory No. 14, is **GRANTED**. The plaintiffs are hereby **ORDERED** to respond to the interrogatory in a manner consistent with this opinion.

### The Request for Admission

Rule 36 of the Federal Rules of Civil Procedure outlines the procedures relating to requests for admission. In pertinent part, it states:

> A party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . . If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission . . . .
>
> . . . .

> The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or than an amended answer be served.

Fed.R.Civ.P. 36(a).

### *Request for Admission No. 82*

■ The plaintiffs first contend, as they argued vis-à-vis Interrogatory No. 1, that the defendant's "diatribe regarding 'relevance' " is of no consequence to this motion. (Pls.' Mem. Opp. Mot., 10/8/04, at 11). Again, the court disagrees. Regarding the scope of discovery, Rule 26 states that "[p]arties may obtain discovery regarding any matter, not privileged, *that is relevant to the claim or defense of any party* . . . ." Fed.R.Civ.P. 26(b)(1)(emphasis added). Any motion based on Rule 26 is inextricably dependent upon a finding of relevance *vel non.* Thus, a discussion of relevance is indispensable and essential. Along those lines, the court agrees with the defendant that this request "goes directly to the heart" of the plaintiff's trade dress infringement claim. (*See* D.'s Mem. Supp. Mot., 9/14/04, at 23). This is not a close case, as even the plaintiffs admit.

While the plaintiffs apparently do not object to "the relevancy of the *document* referred to in Request No. 82," they do, "question the relevance of an '*admission*' as to the composition of products depicted in a document of which they have no personal knowledge." (Pls.' Mem. Opp. Mot., 10/8/04, at 11). However, this contention ignores the fact that the plaintiffs have personal knowledge of the *document* about which they are asked to consider in admitting or denying the proposition in question. Indeed, Exhibit 12 is the *sole* basis upon which they ground their claim of trade dress infringement. (D.'s Mem. Supp. Mot., 9/14/04, at 23 & Ex. B). In their complaint, they assert that

> [i]n connection with advertising, promoting, marketing, offering for sale, selling and distributing in the United States pre-

plugged needles assemblies and/or kits of pre-loaded, pre-plugged needle assemblies, *defendant Custom Care utilizes on its website images of WWMT's Seed–Lock™ needle assemblies and Readi–Load system of sterilized, pre-loaded, pre-plugged needle assemblies, which assemblies and products and their trade dress are inherently distinctive* and have acquired secondary meaning in the eyes and minds of consumers as being uniquely identified with and associated with the products of WWMT. In so doing, Custom Care is using in commerce symbols that are likely to cause confusion, or to cause mistake, or to deceive, as to an affiliation, connection or association between Custom Care and the needle products thereof and WWMT and its products, or approval of the Custom Care products by WWMT, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

(Compl. ¶ 26) (emphases added). If the photograph was sufficient to serve as the sole basis of the plaintiffs' trade dress infringement claim regarding the *inherently distinctive* pre-plugged assemblies, then certainly the plaintiffs must be able to specify whether the photograph depicts an instrument incorporating the same.

The plaintiffs also argue that their response is "properly framed." (Pls.' Mem. Opp. Mot., 10/8/04, at 11). First, they stress the importance of qualification in responding to this request: "While anyone (including Plaintiffs) may look at the photograph and speculate, guess or opine as to whether the needles depicted therein are plugged, only a person who actually viewed the *photographed needles themselves* can state as a matter of fact, *without qualification,* whether they are plugged." (*Id.*). However, while qualification is permitted "where a request contains assertions which are only partially correct, a reviewing court should not permit a responding party to undermine the efficacy of the

rule by crediting ... hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party." *Thalheim v. Eberheim,* 124 F.R.D. 34, 35 (D.Conn.1988). The court finds this to be just such an instance. Discovery is not the place for overly-nuanced, metaphysical distinctions. Adopting Socrates' "the only true wisdom is in knowing you know nothing," one could reasonably deny *all* requests for admission. Our system of discovery, understandably, does not permit such a practice.[4] Either the photograph depicts needles which contain plugs or the photograph does not depict needles which contain plugs.

Second, the plaintiffs argue that their response satisfies Rule 36 of the Federal Rules of Civil Procedure. (Pls.' Mem. Opp. Mot., 10/8/04, at 12–13). Rule 36, in pertinent part, states:

> If objection is made, the reasons therefore shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

Fed.R.Civ.P. 36(a). The argument focuses primarily on whether the phrase, "upon information and belief", is a sufficient qualification under Rule 36(a).

Certainly, "upon information and belief" is a qualification in the common sense of the term. It conditions the response on a lack of

---

4. The plaintiffs go on to claim that the "only way Plaintiffs can provide an unqualified response to this request is to obtain the answer through discovery from Defendant (albeit recognizing that a response under those circumstances would still not be based upon personal knowledge of Plaintiffs.)" (Pl.'s Mem. Opp. Mot., 10/8/04, at

12). The court wonders, then, what it would take to allow the plaintiffs to admit or deny, without qualification, what is a simple statement regarding a photograph which forms the basis of their trade dress infringement claim concerning their inherently distinctive design.

knowledge. As such, however, the court need not determine whether the phrase is a sufficient qualification under Rule 36(a) because the last part of the rule is controlling. That said, that the plaintiffs' "response recites the statutory language supporting Plaintiffs' qualification for lack of information or knowledge," does not resolve the matter. The defendants are certainly within their rights to "move to determine the sufficiency of the answers or objections." *See* Fed. R.Civ.P. 36(a). Implicit in the requirement that the answering party "state . . . that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny" is that, upon motion pursuant to Rules 36 and 37, the court agrees. As explained above, the court does not. The plaintiffs are asked to comment on the properties of a depiction that (1) was provided to them as Exhibit 12 and (2) serves as the sole basis of their trade dress infringement claim. All that the request requires is that the plaintiffs look at the photograph and admit or deny that the needles *pictured* contain a plug. No other information is necessary.

Based upon the foregoing, the court finds that the plaintiffs did not sufficiently respond to Request for Admission No. 82. The request is clearly relevant and the court is not convinced that the plaintiffs have responded in good faith and "to the best of their ability under the circumstances." (Pls.' Mem. Opp. Mot., 10/8/04, at 10). As such, the defendant's motion to the extent that it moves to compel a proper response to Request for Admission No. 82, is **GRANTED**. The plaintiffs are hereby **ORDERED** to respond to the request in a manner consistent with this opinion.

### Costs and Fees

■ Rule 37 of the Federal Rules of Civil Procedure provides, in relevant part, that if a motion pursuant to Rule 36(a) or Rule 37(a)(2) is granted:

the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure . . . was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A). Local Rule 37 further provides that:

Where a party has . . . opposed discovery which has resulted in the filing of a motion, and that party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, sanctions will be imposed with applicable law.

Loc. R. Civ. P. 37(a)4.

The court agrees with the defendant that the "plaintiffs' recalcitrance is not justified under the facts of this case, nor under existing law, and has served only to delay this case and interfere with Genesis's ability to obtain discovery." (D.'s Mem. Supp. Mot., 9/14/04, at 25). As such, within fifteen days of this date, the defendant shall file affidavits attesting to the numbers hours spent bringing and defending this motion and the hourly rate claimed, together with any expenses incurred. Within fifteen days of the defendant's filing, the plaintiffs may file papers challenging the amount of fees and costs claimed.[5]

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. *See* 28 U.S.C. § 636(b)(written objections to ruling

---

**5.** The court is aware that another motion for costs and fees is also pending in this case. Both

will be ruled on in the normal course.

must be filed within ten days after service of same).

**IT IS SO ORDERED.**