McKESSON INFORMATION
SOLUTIONS LLC,
Plaintiff,

v.

EPIC SYSTEMS CORPORATION,
Defendant.

Civil No. 1:06–CV–2965–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 26, 2007.

Adam Scott Katz, Womble Carlyle Sandridge & Rice, Atlanta, GA, George Pazuniak, Gerard M. O'Rourke, Womble Carlyle Sandridge & Rice, PLLC, Wilmington, DE, Jacquelyn Denise Austin, Womble Carlyle Sandridge & Rice, Greenville, SC, Kenneth Matthew Miller, Timothy G. Barber, Womble Carlyle Sandridge & Rice, Charlotte, NC, for Plaintiff.

John C. Alemanni, Kilpatrick Stockton, Winston–Salem, NC, William Henry Boice, David C. Holloway, Jason Delmon Gardner, Steven D. Moore, Kilpatrick Stockton, Atlanta, GA, for Defendant.

### ORDER

CAMP, District Judge.

This matter is currently before the Court on Defendant's motion to compel discovery [# 44].

## I. Background

Plaintiff McKesson Information Solutions, LLC is the assignee of U.S. Patent No. 6,757,898 ("the '898 patent"), which is directed to an "Electronic Provider—Patient Interface System." In general terms, the invention claimed in the '898 patent relates to a communications system for providing automated, electronic communications between a health-care provider and the health-care provider's patients. McKesson refers to its system as the Electronic Provider–Patient Interface, or "ePPiᵀᴹ" for short.

Defendant Epic Systems Corporation manufactures and sells a healthcare information software product known as MyChart®. In December 2006, McKesson filed this lawsuit against Epic for patent infringement. The gravamen of McKesson's Complaint is that Epic, by making, using, and selling the MyChart® software, is infringing the '898 patent. Defendant Epic denies that it infringes the '898 patent, and has filed a counterclaim seeking a declaration that the '898 patent is not infringed and/or is invalid because, *inter alia,* the patent is anticipated by, or is obvious in light of, the prior art.

## II. Discussion

Epic's motion to compel relates to (i) McKesson's interrogatory responses and (ii) McKesson's infringement contentions. The Court addresses each in turn.

### A. Interrogatories

#### 1. Interrogatory No. 1

■ Epic's Interrogatory No. 1 requests information related to when the subject matter of the '898 patent was invented, so as to determine whether McKesson is entitled to claim a priority date earlier than the filing date of the patent. McKesson objects to the interrogatory "on the grounds that it is premature and seeks information not relevant to any claim or defense . . . ." In essence, McKesson argues, because the '898 patent is presumed valid by statute, it is not obligated to disclose such information until such time as Epic "identifies specific examples of purported prior art that trigger the need for

McKesson to specifically detail the concepts of conception and reduction to practice."

A party is entitled to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R.Civ.P. 26(b)(1). In this case, Epic asserts both as a defense and a counterclaim that the '898 patent is invalid as anticipated by, or obvious in light of, the prior art. Because the threshold question of whether the prior art is in fact "prior" depends upon the '898 patent's priority date, the information Epic seeks in Interrogatory No. 1 is unquestionably relevant to a "claim or defense," and thus McKesson may not refuse to produce it. *See Lamoureux v. Genesis Pharm. Servs., Inc.*, 226 F.R.D. 154, 160 (D.Conn.2004) ("The dates in question—when the plaintiffs conceived and reduced to practice the invention claimed with regard to the [patent-in-suit]—are incontrovertibly relevant to defenses and counterclaims based upon statutes which turn almost exclusively on such dates.").

■ McKesson appears to confuse Epic's ultimate burden to establish invalidity with Epic's right to discover information necessary to discharge that burden. Sure enough, the ultimate burden to establish invalidity at summary judgment or trial remains with Epic, *see Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir.1994), but Epic does not have to establish a *prima facie* case of invalidity in order to obtain discovery on the '898 patent's priority date. Nowhere in the Federal Rules of Civil Procedure is it required that a party who carries the ultimate burden on an issue at trial must establish a *prima facie* case before it is entitled to discover information the other party may use to rebut the *prima facie* case. Quite the opposite, the rules contemplate that a party receive this information up front, during discovery, so that when the time comes to discharge its burden it has the ammunition necessary to do so.

### 2. Interrogatory No. 3.

■ In Interrogatory No. 3, Epic requests information related to sales or offers to sell products or services covered by the '898 patent prior to the application for the patent.

McKesson objects to the interrogatory on various grounds, but does name two inventors who may have knowledge of such sales or offers to sell and cites generally to over 7,300 pages of documents that may contain the information requested by Epic.

The information sought in Interrogatory No. 3 is directly relevant to Epic's affirmative defense and counterclaim that the '898 patent is invalid under 35 U.S.C. § 102(b), which provides that a patent is invalid if the invention was "in public use or on sale in [the United States] more than one year prior to the date of the application for patent...." McKesson does not appear to disagree that Epic is entitled to this information, but contends that it has satisfied its burden through its 7,300 page document dump. (Pl.'s Resp. to Mot. to Compel at 7–8 ("McKesson has provided all the documents relating to its development of the patented invention, but it cannot identify documents where the patented invention was offered for sale or sold prior to the critical date, because that did not occur. However, McKesson has properly offered all its development documents for Epic to make its own investigation and reach its own conclusions to the extent it wants to argue that some activity speculatively 'may have been covered by a claim.' ").) Moreover, McKesson now contends that there were no sales or offers to sell prior to the filing date. If true, McKesson is obligated to so state in a verified response to the interrogatory, not in an unverified argument in its brief. If it is not true, McKesson is obligated to identify when the sales or offers for sale took place.

### 3. Interrogatory No. 4

■ Epic seeks in Interrogatory No. 4 to discover the names or trademarks McKesson has used to identify any of its products, systems, or services it contends are covered by the '898 patent. McKesson objects primarily on two bases. First, it contends that the information is "not relevant to the claims or defenses in this action." Second, it objects that the interrogatory is premature because "the scope of the claims is a question of law and ... claim construction has not taken place in this matter."

McKesson's objections are without merit. With regard to McKesson's first objection, the information sought is clearly relevant to, at least, the issue of damages. With regard to its second objection, the fact that the Court has not construed the claims does not save McKesson from answering the discovery request. The interrogatory at issue requests that McKesson identify products, systems, or services it *"contends to be covered by the ['898 patent]."* Plaintiff McKesson, who brought this patent infringement action in the first place, cannot reasonably argue that it is unable to determine what it contends its patent covers until the Court construes the claims.

### 4. Interrogatory No. 5; Request for Production No. 25

■ Interrogatory No. 5 and Request for Production No. 25 request information related the "marking" of McKesson's products, systems, or services covered by the '898 patent. McKesson objects on the ground that such information is irrelevant because the '898 patent claims a method and thus does not require marking.

■ Generally speaking, damages for patent infringement are unavailable prior to the time that the alleged infringer has notice of the infringement. Notice may be given *in* two ways. The patentee may provide constructive notice of infringement by marking the products made according to the patent with the number of the patent. *See generally* 35 U.S.C. § 287; *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed.Cir. 1993). The patentee may provide actual notice of infringement by sending a cease-and-desist letter to the alleged infringer or by filing a lawsuit for patent infringement. *Id.*

■ The constructive notice provision does not apply, however, "where the patent is directed to a process or method." *Am. Med. Sys.*, 6 F.3d at 1538. Based on this proposition, McKesson asserts that its patent contains only method claims and thus any requested discovery that deals with marking is irrelevant. Defendant Epic disagrees. It points to claim 2 of the '898 patent, which recites "a method of automatically and electronically communicating between at least one health-care provider and a plurality of users serviced by the health-care provider ... *wherein the method is implemented by an electronic provider-patient interface system* ..." '898 patent, col. 45, ll. 25–26 (emphasis added), and argues that the '898 patent contains both method and system claims. Consequently, it contends the marking statute is applicable. As noted by the Federal Circuit in *American Medical Systems,*

> The purpose behind the marking statute is to encourage the patentee to give notice to the public of the patent. The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed to only a method or process there is nothing to mark. *Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a).*

*Id.* at 1538–39 (emphasis added). At least one court has extended this rationale to require that the owner of a patent directed to a "method and system for trading loans" mark the website through which the software is accessed. *See IMX, Inc. v. LendingTree LLC*, 79 U.S.P.Q.2d 1373, 1376, 2005 WL 3465555 (D.Del.2005).

In view of *American Medical Systems* and *IMX*, whether or not the '898 patent is subject to the marking requirement of 35 U.S.C. § 287 may be a close question. The Court declines to decide the question at this juncture, however, and will reserve the issue for summary judgment, which will allow the parties an opportunity to review discovery and provide detailed briefing.

As of this moment, Epic asserts a marking defense and claims that McKesson cannot recover damages for alleged infringements which occurred prior to the filing of the Complaint because it did not properly mark the products and/or services made according to the '898 patent. Consequently, the information it requests is relevant to its marking defense and can be produced by McKesson

with little effort. Thus, McKesson is ordered produce it.

### 5. Interrogatory No. 7

In Interrogatory No. 7, Epic requests information related to any study done by McKesson with respect to the infringement, interpretation, validity, or enforceability of the '898 patent. McKesson objects on the ground that the request "seeks information which is subject to the attorney-client and/or the attorney work product privileges."

■■■ McKesson's objection is without merit for two reasons. First, the attorney-client privilege protects only the disclosure of communications between an attorney and the client; it does not protect the disclosure of facts. *Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). Thus, while the privilege may prevent disclosure of the studies or reports themselves, it does not prevent disclosure of whether a study was done or who performed the study. Second, McKesson overlooks the fact that there may be studies or reports in its possession that are not entitled to be withheld on the basis of privilege. McKesson is ordered either to produce the information requested in Interrogatory No. 7 or to provide a privilege log in accordance with Rule 26(b)(5).

### 6. Interrogatory No. 13

■■■ Interrogatory No. 13 requests an identification and description of "all systems, products, or services that McKesson has designed, implemented, offered for sale, or distributed for use by a patient or other user of a health care provider." In response, McKesson identifies certain systems by name but fails to provide a description of the systems as requested. It is unclear why McKesson refuses to comply with a request so simple as to describe these products and services, but its refusal indicates the lack of cooperation which required this motion in the first place. The information sought is ordered to be produced.

### 7. Interrogatory No. 15

■■■ Interrogatory No. 15 requests a description of the facts related to objective indicia of non-obviousness of the '898 patent. McKesson objects primarily on the basis that the request is premature and argues that "[u]ntil Epic brings forth evidence of prior art, McKesson has no duty to establish that its invention was non-obvious at the time of patenting."

As the Court has previously discussed with respect to Interrogatory No. 1, McKesson may not refuse to produce evidence relevant to Epic's affirmative defense and counterclaim that the '898 patent is invalid. McKesson is ordered to produce the information.

### B. Infringement Contentions

■■■ Defendant Epic also moves to compel McKesson to supplement its infringement contentions. Pursuant to Local Patent Rule 4.1(b)(3), McKesson is required to provide "[a] chart identifying specifically where each element of each asserted claim is found within [the accused infringing device]." It is undisputed that McKesson has failed to identify where certain elements of the '898 patent are found in Epic's MyChart® software. McKesson argues, in essence, that it cannot identify each and every element of its patent in MyChart® until Epic provides discovery as to how the software works because the software is secret. (Pl.'s Resp. to Mot. to Compel at 15 ("The publicly available information regarding MyChart®, such as the information available on the internet and descriptions of MyChart® in Epic's patent application, demonstrates that Epic does practice the patented methods, but some details of McKesson's contentions can only be answered after McKesson has had access to the proprietary information, which McKesson still has not received.").)

The Court understands the difficulty of identifying elements of the '898 patent in Epic's proprietary software. Its infringement contentions, however, with respect to such terms as the "provider-patient interface service center," are plainly deficient. Pursuant to Rule 11, McKesson was required to have a reasonable belief, prior to filing suit, that Epic infringed at least one claim of the

'898 patent. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed.Cir. 2000). This, of course, requires a reasonable belief that the accused infringing system meets each and every element of one of those claims. *Cf. Network Caching Tech., LLC v. Novell, Inc.*, No. 01–2079, 2002 WL 32126128, at *5 (N.D.Cal. Aug.13, 2002).

In view of McKesson's obligations under Rule 11, the Local Patent Rules require that it at least provide in its infringement contentions the facts discovered during its prefiling investigation. *Id.* at *4.[1] McKesson's current offering, which in some cases merely recites the language of the claim element at issue, is insufficient.

## III. Sanctions

 Under Rule 37, the Court shall require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A).

At bottom, the record reveals that McKesson took a lackadaisical approach to its obligations under Rule 26. For many of the interrogatories at issue, only a modicum of effort and cooperation would have prevented the filing of this motion. The Court finds that sanctions are appropriate and warranted. McKesson shall pay Epic the attorneys' fees and costs associated with bringing the instant motion to compel.

## IV. Conclusion

Defendant Epic's motion to compel discovery [# 44] is **GRANTED.** Plaintiff

McKesson is **DIRECTED** to supplement its responses to Epic's interrogatories and its infringement contentions within ten (10) days of entry of this Order. Pursuant to 37(a)(4)(A), Defendant Epic's request for attorneys' fees and costs is **GRANTED.** Epic is **DIRECTED** to file an application for attorneys' fees within ten (10) days of entry of this Order. McKesson may respond within ten (10) days.

**SO ORDERED.**

1. The Court finds decisions of the U.S. District Court for the Northern District of California, on whose local patent rules this District's local patent rules are based, to be persuasive authority for issues, such as these, concerning those rules.