**MCKESSON INFORMATION SOLUTIONS LLC,**
Plaintiff

v.

**EPIC SYSTEMS CORPORATION,**
Defendant.

**No. 1:06 CV 2965 JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 16, 2007.

Adam Scott Katz, Womble Carlyle San-
dridge & Rice, Atlanta, GA, George Pazun-

iak, Gerard M. O'Rourke, Womble Carlyle Sandridge & Rice, PLLC, Wilmington, DE, Jacquelyn Denise Austin, Womble Carlyle Sandridge & Rice, Greenville, SC, Kenneth Matthew Miller, Timothy G. Barber, Womble Carlyle Sandridge & Rice, Charlotte, NC, for Plaintiff.

John C. Alemanni, Kilpatrick Stockton, Winston–Salem, NC, William Henry Boice, David C. Holloway, Jason Delmon Gardner, Steven D. Moore, Kilpatrick Stockton, Atlanta, GA, for Defendant.

## ORDER

CAMP, District Judge.

This matter is currently before the Court on Plaintiff's emergency motion to continue claim construction scheduling deadlines and to compel Defendant's compliance with Local Patent Rule 4.2[# 67]. Also pending is Defendant's motion for leave to file sur-reply [# 76].

## I. Factual Background

Plaintiff McKesson Information Solutions, LLC is the assignee of U.S. Patent No. 6,757,898 ("the '898 patent"), which is directed to an "Electronic Provider–Patient Interface System." In general terms, the invention claimed in the '898 patent relates to a communications system for providing automated, electronic communications between a health-care provider and the health-care provider's patients. McKesson refers to its system as the Electronic Provider–Patient Interface, or "ePPi ™" for short.

Defendant Epic Systems Corporation manufactures and sells a healthcare information software product known as MyChart®. In December 2006, McKesson filed this lawsuit against Epic for patent infringement. The gravamen of McKesson's Complaint is that Epic, by making, using, and selling the MyChart® software, is infringing the '898 patent. Epic denies that it infringes the '898 patent and has filed a counterclaim seeking a declaration that the '898 patent is not infringed and/or is invalid because, *inter alia*, the patent is anticipated by, or is obvious in light of, the prior art.

## II. Procedural Background

On Monday, July 2, 2007, the parties' simultaneous exchange of preliminary claim constructions under Local Patent Rule ("LPR") 6.2 was set to occur. On Friday, June 29, 2007, the last business day before the exchange was to take place, Plaintiff McKesson filed the instant emergency motion to continue claim construction scheduling deadlines and to compel Defendant's compliance with LPR 4.2. The thrust of McKesson's motion is that Epic failed to meet its obligation under LPR 4.2 to provide information sufficient for McKesson to understand the operation of the accused MyChart® software. McKesson argues that Epic's failure in this regard renders it impossible for McKesson to meaningfully prepare and exchange its preliminary claim constructions under LPR 6.2. Consequently, it filed the instant motion and requests that Defendant be compelled to comply with LPR 4.2 and that the claim construction deadlines set forth in LPR 6 be postponed accordingly.

Immediately following the filing of the motion, the parties agreed to an abbreviated briefing schedule on the motion to compel and to stay the claim construction deadlines pending the Court's ruling on the motion to compel. Accordingly, the Court granted Plaintiff McKesson's motion to stay claim construction deadlines and deferred ruling on the motion to compel. (Order, June 29, 2007.) The motion to compel, now fully briefed, is ripe for consideration.

## III. Discussion

Plaintiff's McKesson's motion presents two issues of first impression which relate

to the interpretation of and relation between LPR 4.2 and LPR 6.2. The Court first gives an overview of the Local Patent Rules, which is necessary for an understanding of the substantive aspects of McKesson's motion.

### A. Overview of the Local Patent Rules

The Local Patent Rules endeavor "to facilitate the speedy, fair and efficient resolution of patent disputes." LPR 1.2(a). Generally speaking, the Local Patent Rules set forth a sequence of phases whereby the parties commence discovery, disclose infringement and invalidity contentions, and engage in claim construction proceedings. The rules also set forth certain provisions relating to issues that frequently arise in patent litigation, such as the treatment of confidential information, expert witnesses, etc.

The Local Patent Rules have been characterized as an "exercise in forced door closing," in the sense that they force the parties to take infringement and invalidity positions early in the litigation and stick to them. For instance, a plaintiff asserting patent infringement must detail specifically, within sixty days of the defendant's answer, how it contends the defendant is infringing its patent. See LPR 4.1; LPR 4.4(a). Likewise, a defendant must soon thereafter specifically identify the basis for any claim that the patent asserted is invalid. See LPR 4.2; LPR 4.4(b). Both of these requirements put the parties on notice early in the discovery process of the infringement and invalidity issues in the case. They also enable the parties to identify the claim terms in dispute so that the Court may construe only those terms which are relevant to the infringement and invalidity issues identified by the parties.

The Local Patent Rules, adopted in 2004, were intended to accomplish several major purposes. First, the rules were enacted to create a uniform schedule that prescribes the time and manner for disclosure of information pertaining to such issues as infringement, invalidity, and claim construction. Such a timeline promotes efficient discovery and reduces the potential for discovery disputes and wasted effort. Second, the Local Patent Rules were intended to address the types of disputes which frequently arise in patent cases but which are generally addressed similarly— for example, how to treat confidential information prior to the entry of a protective order. See LPR 2.1. Thus, the rules reduce needless procedural litigation. Third, the rules were enacted to elicit the parties' positions on infringement and invalidity early in the case. By requiring the parties to take positions sooner rather than later, the Local Patent Rules discourage gamesmanship and tend to facilitate early resolution of the dispute. Finally, because the Local Patent Rules streamline the pretrial process and endeavor to uniformly address questions often brought before the Court, they provide certainty and thus minimize the overall burden and expense on the Court and litigants.

The Local Patent Rules, similar to the local patent rules other districts have adopted (e.g., the Eastern District of Texas), are based in part on the rules promulgated by the Northern District of California. Thus, the decisions of those courts related to their patent rules can be persuasive—though not binding—authority for interpretation of this Court's rules where an analogous provision is at issue. *See McKesson Info. Solutions, LLC v. Epic Sys. Corp.,* 242 F.R.D. 689, 695 n. 1, 2007 WL 1830793, at *5 n.1 (N.D.Ga.2007) (Camp, C.J.).

### B. LPR 4

■ LPR 4 governs the disclosure of infringement and invalidity contentions.

LPR 4.1 requires a party claiming patent infringement to serve the alleged infringer with a "Disclosure of Infringement Contentions," which generally speaking, identifies "where each element of each asserted claim is found within [the accused infringing method or device]." *See* LPR 4.1(b)(3). LPR 4.2, at issue here, requires that the accused infringer respond to the Disclosure of Infringement Contentions in the following manner:

(a) A party opposing a claim of infringement shall make the following Response to Infringement Contentions within the time period provided by these rules:

(1) The Response to Infringement Contentions shall include a chart responsive to the claims chart contained within the Disclosure of Infringement Contentions, and shall either acknowledge or deny whether each element of each asserted claim is found within each Accused Instrumentality;

(2) The Response to Infringement Contentions *shall include a copy of source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation or composition of an [accused infringing device or method] identified in the Disclosure of Infringement Contentions* within the time period specified by these Rules.

LPR 4.2 (emphasis added).

McKesson argues that Epic's Response to Infringement Contentions is insufficient under LPR 4.2(a)(2) because Epic initially produced only the source code[1] for the MyChart® software and moves to compel production of the source code documentation[2] for the program. Epic counters that production of source code is sufficient under LPR 4.2(a)(2), and, in any event, that it provided the source code documentation as soon as it determined what McKesson sought.

LPR 4.2(a)(2) requires that the alleged infringing party provide with its Response to Infringement Contentions "a copy of source code, specifications, schematics, flow charts, artwork, formulas, or other documentation *sufficient to show the operation or composition*" of the allegedly infringing method or device. The rule does not provide a talismanic recipe for what documents or combination of documents should be produced in any given case. Instead, the rule provides a non-exhaustive list of materials that might be produced and places the burden on the producing party to determine what is sufficient under the particular circumstances of its case. What is sufficient as defined by LPR 4.2(a)(2), of course, will vary depending on the technology at issue. For example, in a case involving infringement of a relatively simple mechanical device, *e.g.*, U.S. Patent No. 6,338,511 (filed Jan. 13, 2000), it may be enough for the alleged infringer to simply provide a diagram of the infringing device to enable the patent owner to determine its operation. However, in cases that involve more complex technology, such as this one, the rule requires more.

1. Source code is the human-readable version of a computer program that is written by the programmer. Once written, the source code is "compiled" into nonhuman-readable "object code" or "machine code," the form used by the computer to execute the program.

2. According to McKesson's computer expert, source code documentation is "basic information" that "specifies what the [source] code is supposed to do and how it is supposed to do it." (Isbell Decl. ¶ 2.) Source code documentation may also include information related to "decisions and requests made with regard to the [software], such as adding or removing a function, or fixing a problem that has been identified within the system." (Dvorak Decl. ¶ 7.)

Epic's MyChart® software is a complex computer program. It is part of an integrated product suite and functions to, among other things, allow the patient of a health care provider to access "a wide range of information about [his] health (such as allergies, current medications, and immunization histories . . . ), review information from past visits (such as patient instructions [from the provider] ), send messages to [the] provider[ ], [etc.]" (*See* Dvorak Decl. ¶ 6.) The source code for MyChart® is written in multiple computer languages and is distributed across 7,599 files in 1,559 folders. (Isbell Decl. ¶ 4.) Dr. Isbell, McKesson's computer expert, avers that "[i]t is very difficult, if at all possible, to understand what the code does and how it does it without [ ] design or other documentation to act as a roadmap." (*Id.*) Mr. Dvorak, Epic's expert, does not dispute the point, and instead appears to agree that the source code documentation would be useful in determining the operation of the program. (Dvorak Decl. ¶ 7.)

██ In view of the complexity of the MyChart® software, as well as Dr. Isbell's uncontroverted testimony regarding the need for source code documentation to provide a roadmap for the source code, Epic's initial production of only the source code was not "sufficient to show the operation" of MyChart®.[3] It may be true that McKesson, aided by an army of computer scientists, could eventually determine the operation of the MyChart® software by poring over the thousands of files of source code, but the Local Patent Rules do not require such herculean effort. The requirement that the alleged infringing party provide whatever information is "sufficient to show the operation" of the accused device or method carries with it a good faith obligation to provide the types of informa-

tion that will enable the party asserting infringement to reasonably determine the operation of the accused device or method without undue burden or expense.

Because the source code alone is not sufficient to reasonably show the operation of the MyChart® software, something more is required to be produced under LPR 4.2(a)(2). Thus, McKesson's motion to compel [# 67] is **GRANTED**. It appears from the record, however, that the source code documentation requested by McKesson, or some portion thereof, was produced by Epic contemporaneously with the filing of McKesson's motion, as soon as the nature of the information sought was understood. (*See* Def.'s Resp. to Mot. to Compel, Ex. E.) To the extent the complete source code documentation has not been produced, Epic is **DIRECTED** to produce it within ten (10) days of entry of this Order.

### C. *LPR 6*

██ LPR 6 governs claim construction proceedings. Claim construction proceeds under the Local Patent Rules in essentially three phases. In the first phase the parties simultaneously exchange among themselves a list of claim terms they contend should be construed by the Court and then the proposed preliminary constructions for those terms. *See* LPR 6.1; LPR 6.2. In the second phase the parties submit to the Court a joint claim construction statement, which identifies the terms proposed for construction and each party's position, and then detailed briefing with respect to their positions on how the claims should be construed. *See* LPR 6.3; LPR 6.5. In the final phase the Court construes the claims, typically after hold-

---

**3.** The Court takes no position on whether the production of source code may be sufficient in another case involving different software.

ing a *Markman* hearing for that purpose. *See* LPR 6.6.

At issue in this case is the first phase. McKesson argues that it is unable, or at least ill-equipped, to exchange its preliminary constructions until it receives the source code documentation. It reasons that without sufficient knowledge of the operation of the MyChart® software, it cannot properly focus its preliminary constructions on only those claim terms that are actually at issue. Defendant Epic argues that is inappropriate to construe claim terms by reference to the accused device and therefore that claim construction should proceed because the information sought is irrelevant for that purpose.

■■■ It is generally inappropriate to construe a claim term by reference to the accused infringing device. The claims are "construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed.Cir.1985) (en banc). Thus, it would be improper, for instance, to construe the '898 patent's "provider-patient interface service center" by reference to how Epic's MyChart® software accomplishes that function. As numerous decisions of the Federal Circuit have made clear, however, claim construction does not occur in a vacuum. "While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326–27 (Fed. Cir.2006); *see also generally* 5A Donald S. Chisum, *Chisum on Patents* § 18.03 (2007). For example, such context is helpful "when determining what aspect[s] of the claim[s] should be construed." *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 n. 10 (Fed.Cir.2006); *see also Pall Corp. v. Hemasure, Inc.*, 181 F.3d 1305, 1308 (Fed.Cir.1999) ("Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute.").

Indeed, the Local Patent Rules contemplate that the parties will have the benefit of this context by requiring that the parties' contentions under LPR 4 be disclosed before claim construction proceedings under LPR 6 begin. For example, a party asserting infringement will, after receiving the Response to Infringement Contentions, have thirty days to identify its proposed claim terms under LPR 6.1 and twenty days thereafter to prepare its preliminary proposed constructions for those terms under LPR 6.2. By ensuring that the parties are fully apprised of the invalidity and infringement issues before requiring them to identify the claim terms to be construed, the Local Patent Rules allow them to properly identify only those claim terms relevant to the case. This procedure has obvious benefits. Primarily, it presents to the Court only those claim construction issues which are relevant to the parties' dispute, and thus prevents a waste of time addressing issues that do not assist in resolving the case. The procedure also focuses the claim constructions so that they can assist the Court in determining the ultimate issues of infringement and invalidity.

The infringement and invalidity contentions set forth in LPR 4 provide important context for the claim construction proceedings set forth in LPR 6. Thus, the Court will adjust the claim construction deadlines so that Plaintiff McKesson has an opportu-

nity to fully review the source code documentation prior to exchanging preliminary constructions under LPR 6.2.

## IV. Sanctions

 McKesson requests attorneys' fees and costs related to its motion to compel under LPR 4.2. Pursuant to Federal Rule of Civil Procedure 37, the Court shall

> require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A). The Court's decision to award attorneys' fees and costs under Rule 37 is reviewed on appeal for abuse of discretion. *See Merritt v. Int'l Bhd. of Boilermakers,* 649 F.2d 1013, 1016 n. 6 (5th Cir.1981)[4]; *cf. Navarro v. Cohan,* 856 F.2d 141, 142 (11th Cir.1988).

The Court declines to impose attorneys' fees and costs in this instance for several reasons. First, the issues confronted by McKesson's motion involve issues unique to this Court's Local Patent Rules, and no other decision the Court has found addresses either the sufficiency of disclosures under LPR 4.2(a)(2) or the interplay between LPR 4 and LPR 6. Second, the record reveals that Defendant Epic made some effort to identify and produce the information sought by McKesson, but that the delay in producing the source code documentation requested by Dr. Isbell resulted primarily from confusion over what documents, manuals, etc., actually constituted "source code documentation." (*See* Def.'s Resp. to Mot. to Compel, Ex. E.) These circumstances warrant that the parties bear their own costs.

## V. Scheduling

The Court previously stayed all claim construction deadlines pending resolution of McKesson's motion. (Order, June 29, 2007.) The parties are **DIRECTED** to jointly submit a proposed scheduling order within ten (10) days of entry of this Order addressing all remaining deadlines under the Local Patent Rules, subject to the parameter that the parties' LPR 6.2 exchange of preliminary constructions shall take place twenty-five (25) days from McKesson's receipt of Epic's complete LPR 4.2(a)(2) production.

## VI. Conclusion

Plaintiff McKesson's motion to compel [# 67] is **GRANTED**. McKesson's request for attorneys' fees and costs is **DENIED**. Defendant Epic's motion for leave to file sur-reply [# 76] is **GRANTED**.

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down on or before September 30, 1981.