**I–FLOW CORPORATION, Plaintiff**

v.

**APEX MEDICAL TECHNOLOGIES, INC., et al., Defendants.**

Civil No. 07cv1200–DMS(NLS).

United States District Court, S.D. California.

May 13, 2008.

Boris Zelkind, Knobbe Martens Olson & Bear, San Diego, CA, for Plaintiff.

Norbert Stahl, Stahl Law Firm, San Carlos, CA, Ralph B. Kalfayan, Krause Kalfayan Benink and Slavens, San Diego, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION [Doc. No. 49]

NITA L. STORMES, United States Magistrate Judge.

Before the Court in the above-captioned matter is Plaintiff I–Flow Corporation's ("I–Flow") Motion to Compel Document Production pursuant to Patent Local Rule 3.4(a) [Doc. No. 49]. I–Flow contends that Defendants Apex Medical Technologies, Inc. and Mark McGlothlin (collectively "Apex") have failed to produce documents that fully detail the operation and structure of the accused device in this litigation. Apex opposes I–Flow's motion [Doc. No. 57], arguing that the documentation previously produced sufficiently demonstrates the specifics of the accused device. I–Flow filed a reply [Doc. No. 59]. For the following reasons, the Court **GRANTS** I–Flow's motion to compel.

### BACKGROUND

On January 14, 2008, I–Flow filed a Second Amended Complaint ("SAC") alleging a number of claims against Apex, including infringement of U.S. Patent No. 5,284,481 entitled "Compact Collapsible Infusion Apparatus" ("the '481 patent"). (*See Plaintiff's SAC* ¶¶ 8–11, Doc. No. 30.) I–Flow claims that Apex infringed I–Flow's patent rights by making and marketing for sale the Solace® Infusion Pump ("accused device"). (*Id.*) On February 11, 2008, Apex timely served their Preliminary Invalidity Contentions pursuant to Patent Local Rule 3.3, along with the corresponding required document production, pursuant to Patent Local Rule 3.4. (*Zelkind Decl'n. in Support of Motion to Compel* ¶ 3.) According to I–Flow, the document production contained thirteen total pages of documents, including an eight page sales brochure and five pages of drawings, none of which demonstrate in adequate detail the structural components, technical specifications, or operation of the accused device. (*Zelkind Decl'n.,* Ex. "H.") After a series of meet and confer attempts, Apex asserted that documentation of the accused device's operation had been provided, and nothing further could be identified in their business documents. (*Id.,* Ex. "E.") Not convinced, and suspecting that certain documents out of the thirteen had been created for purposes of this litigation, I–Flow filed the instant motion seeking a Court order compelling Apex to produce "any and all" documents describing the operation, structure, and other technical details of the accused device. Apex argues that they timely produced documentation "sufficient" to show the operation of the pump, and they have no greater obligation under the applicable Patent Local Rules.

### *Discussion*

The crux of this dispute involves the scope of the production requirement imposed by Patent Local Rule 3.4(a) ("Rule 3.4(a)"), which applies to patent cases proceeding before this Court. Rule 3.4 provides:

With the "Preliminary Invalidity Contentions," the party opposing a claim of patent infringement must produce or make available for inspection and copying:

a. Source code, specifications, schematics, flow charts, artwork, formulas, or oth-

er documentation sufficient to show the operation of any aspect or elements of any Accused Instrumentality identified by the patent claimant in its Patent L.R. 3.1c chart; . . ."

Patent L.R. 3.4(a).

I–Flow objects to Apex's Rule 3.4(a) production on the grounds that the documents do not detail the specifics of the accused device, provide no detail of the internal structure, provide no technical specifications describing the components or materials used to manufacture the accused device, and do not identify the dimensions of the structural components. (*Plaintiff's Memorandum*, 5.) According to I–Flow, the document production accompanying Apex's Preliminary Invalidity Contentions consisted of five pages of superficial drawings and an eight page sales brochure. (*Id.* at 2.) I–Flow therefore seeks additional documentation containing the technical specifications and describing the internal structural components for the accused device, including the support member, sleeve, inlet port, outlet port, reservoir, and housing. (*Id.* at 5.)

Apex contends that they fully complied with Rule 3.4(a), insofar as the documents produced demonstrate the function of all aspects of the accused device. (*Defendants' Opposition*, 3.) Apex argues that I–Flow failed to identify any specific deficiencies in the documents during their meet and confer attempts, and that the documents produced show the "function of the accused product extremely well." (*Id.*) Apex accuses I–Flow of relying on attorney argument only in support of their motion, and insists that I–Flow's motion should be denied, and instead I–Flow first should be required to show what aspects of the accused device are not sufficiently demonstrated in the documents previously produced. (*Id.* at 4.) Apex provides several declarations in support of their opposition, including the declaration of Mark McGothlin, the President and CEO of Apex. Mr. McGothlin declares under penalty of perjury that the thirteen pages of documentation at issue "show the operation of all aspects of the Solace® pump." (*McGothlin Decl'n.* ¶ 3.)

In reply, I–Flow argues that Apex disregards current case law, and relies upon a narrow interpretation of Rule 3.4(a), rejected previously by this district and others, to support their contention that the documents produced are "sufficient" to show the accused device's operation. (*Plaintiff's Reply*, 2.) I–Flow also alleges that the declaration of Apex's counsel, filed in support of their opposition, contains false statements which misrepresent the substance of their meet and confer efforts. (*Id.* at 3.) I–Flow provides several declarations to support these contentions.

First, Apex's assertion that I–Flow failed to identify specific deficiencies in the produced documents is discredited by Exhibit "D" filed in support of I–Flow's motion to compel. Exhibit "D" is a letter from I–Flow's lead counsel to Apex's lead counsel dated March 26, 2008, delivered via email and U.S. mail, and responded to by Apex's letter dated March 27, 2008 (Ex. "E"). In the March 26, 2008 letter, I–Flow's counsel states:

"You indicated two weeks ago that you would look into whether Apex or Mr. McGothlin have any additional documents in their possession or control, such as specifications, schematics, artwork, flowcharts, or drawings, that show the structure or operation of the accused instrumentality."

(*Plaintiff's Memorandum*, Ex. "D.") In that same letter, I–Flow requested clarification from Apex regarding I–Flow's suspicion that some of the thirteen pages produced had been created specifically for the purpose of this litigation. (*Id.*) Apex replied the next day, citing to the portion of Rule 3.4(a) which states that documentation must be "sufficient," and further asserting that "We cannot identify anything that is missing from Apex's business documents we provided to you." (*Plaintiff's Memorandum*, Ex. "E") In a declaration made by Ian Jaquette, an associate assisting with the representation of I–Flow, he states that during a March 10, 2008 telephonic conference, I–Flow's lead counsel:

"expressly pointed out the fact that the documents produced by Defendants provided no details about the structure of the inlet or outlet port, the material composition of the housing, the material composition of the elastic bladder, the dimensions

of the pump, or the operating specifications of the pump, including pressures and fill volumes."

(*Jaquette Decl'n.* ¶ 2) The declaration of Mr. Jaquette is convincing due to its detailed account of the conversation between lead counsel on March 10, 2008, prior to the March 26, 2008 I–Flow letter to Apex. The March 26, 2008 letter states I–Flow's objections to Apex's document production in broader terms, but is consistent with I–Flow's assertion that very detailed issues were addressed regarding the deficiencies in the documents produced in prior meet and confer conversations, i.e. the March 10, 2008 telephone conference, and thus follow-up correspondence was couched in more general terms for the sake of non-repetitiveness and brevity. The Court therefore finds Apex's first argument regarding I–Flow's failure to meet and confer properly on these issues unpersuasive.

Second, and most importantly, the Court notes that Apex's contention that I–Flow relies only upon attorney argument to support the motion to compel is wholly unfounded and misrepresents the substance of I–Flow's moving papers. I–Flow's memorandum in support of their motion cites to several recent cases that have interpreted this district's Rule 3.4(a) and nearly identical rules in other districts to require document production that goes beyond the bare minimum. (*Id.* at 4–5.) Specifically, I–Flow relies upon a January 16, 2008 case out of this district, *NessCap Co., Ltd. v. Maxwell Technologies, Inc.,* 2008 WL 152147 (S.D.Cal.2008), to support their argument that Apex's production is inadequate. Apex cites the *NessCap* case as well (it is the only case cited by Apex) in support of their opposing argument that the produced documents need only be sufficiently demonstrative of the operation of the accused device, nothing more. (*Apex's Opposition,* 3.) Both parties rely on the *NessCap* case, and in doing so advance diametrically opposed positions regarding *NessCap's* interpretation of Rule 3.4(a).

In *NessCap,* the court was called upon to interpret the "sufficiency" requirement of Rule 3.4(a). In a thorough and well-reasoned analysis, taking into account recent cases in the Northern District of California, which has an almost identical rule, the *NessCap* court held that Rule 3.4(a) requires the alleged infringer to produce "**any and all** documents describing the operation or structures of [the] accused devices ..." *NessCap,* 2008 WL 152147 at *3 (S.D.Cal.2008), *citing IXYS Corp. v. Advanced Power Tech., Inc.,* 2004 WL 1368860 at *3 (N.D.Cal.2004); *Cryptography Research, Inc. v. Visa Int'l Serv. Assoc.,* 2005 WL 1787421 (N.D.Cal. 2005). The court further explained that this interpretation of Rule 3.4(a) requires "the responding party to provide the raw data (source code, schematics, formulas, etc.) sufficient to show the operation of the accused aspects of the products in order to allow the patentee to make it's own determinations as to infringement." *Id.,citing McKesson Info. Solutions LLC v. Epic Sys. Corp.,* 495 F.Supp.2d 1329, 1333 (N.D.Ga.2007). This Court agrees with the holdings of the cases from our sister district cited in *NessCap,* agrees with the *NessCap* court's interpretation of this district's Rule 3.4(a), which accords a broader scope to the production required under the rule, and therefore rejects Apex's narrow reading of the rule.

The Court having found Apex's meet and confer allegations unpersuasive, the remainder of Apex's opposition relies upon their erroneous interpretation of the production required to comply with Rule 3.4(a). Apex advances the declaration of its President and CEO, Mark McGothlin, to support their assertion that the thirteen documents produced are sufficient. Mr. McGothlin declares that "the documents show the operation of all aspects of the Solace pump." (*McGothlin Decl'n.* ¶ 3.) However, this statement is carefully worded to avoid the real issue at the heart of I–Flow's motion—whether the produced documents are indeed "sufficient" under Rule 3.4(a); whether any other documents exist that detail the "source code, specifications, schematics, flow charts, artwork, formulas, or ... show the operation of any aspect or elements of the accused device;" and whether any and all documents that demonstrate these aspects of the accused device as required by Rule 3.4(a) have been produced. As such, Mr. McGothlin's declaration does not support a finding that

Apex has complied fully with Rule 3.4(a) as construed by the *NessCap* court and this order.

In a February press release addressing this and other pending litigation against I–Flow, Mr. McGothlin states:

"Our Solace product development was based upon years of research targeted at developing an affordable, latex-free infusion pump as an alternative to latex-containing pumps, which currently dominate the market."

(*See* "United States Patent Office Accepts Zone Medical LLC's Request to Reexamine a Key Patent of I–Flow Corporation" *released February 18, 2008 by Zone Medical, LLC, the worldwide distributor for the Solace® Post Operative Pain Relief System, San Diego, California* available at *http://www.solacepainrelief.com/pr.html*.) After "years of research" and the development of a pump that allegedly differs quite significantly from others in the market due to its use of non-latex based materials (patented synthetic rubber), "new valve technology," and "a compact and portable design," the Court finds it incredible that Apex is not in possession or control of additional documentation demonstrating the operation, structural components, and technical specifications of the accused device beyond thirteen pages of documents consisting of a sales brochure and drawing. (*See* Solace® "Frequently Asked Questions," available at *http://www.solacepainrelief.com/faq.html*.)

Accordingly, the Court finds that Apex has failed to comply with Patent Local Rule 3.4(a) and Paragraph 8 of this Court's Scheduling Order [Doc. No. 22], and accordingly shall compel Apex to produce further documentation demonstrating the operation of any aspects or elements of the accused device, including but not limited to source code, specifications, schematics, flow charts, artwork, or formulas.

### CONCLUSION

Based on the foregoing reasons, the Court GRANTS I–Flow's motion to compel. Apex is hereby ordered to produce any and all additional documentation in compliance with Patent Local Rule 3.4(a) on or before *June 4.2008.*

*Failure to comply with the Court's order shall be grounds for the imposition of sanctions, including but not limited to exclusion of evidence, taking certain facts as established, and/or monetary sanctions. See Fed.R.Civ.P. 37(c).*

**IT IS SO ORDERED.**